Alvarez v State of New York (2024 NY Slip Op 51378(U))

[*1]

Alvarez v State of New York

2024 NY Slip Op 51378(U)

Decided on September 20, 2024

Court Of Claims

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 20, 2024
Court of Claims

Orlando Alvarez, Claimant(s),

against
The State of New York, Defendant(s).

Claim No. 141374

Claimant's attorney:
ORLANDO ALVAREZ
Pro Se
Defendant's attorney:
HON. LETITIA JAMES
Attorney General for the State of New York
By: Michael T. Krenrich, Assistant Attorney General

Walter Rivera, J.

The following papers numbered 1-3 were read and considered by the Court on claimant's motion for summary judgment on the issues of liability and damages based upon his claim of alleged wrongful confinement in the Special Housing Unit (SHU) during his incarceration at Eastern NY Correctional Facility (Eastern) (Motion No. M-100435) and the State's cross-motion to dismiss the claim pursuant to CPLR 3211 (a) (7) on the basis that the claim fails to state a cause of action upon which relief may be granted (Cross-Motion No. CM-100905):
Notice of Motion, Claimant's Supporting Affidavit, Memorandum of Law and Exhibits. 1
Notice of Cross-Motion, Attorney's Affirmation in Opposition to Claimant's Motion for Summary Judgment and in Support of the State's Cross-Motion to Dismiss the Claim 2
Affirmation in Opposition to Cross-Motion for Summary Judgment Dismissing the Claim 3
Filed papers; Claim
Claim No. 141374 alleges that at approximately 7:45 a.m. on October 10, 2023, during claimant's incarceration at Eastern, Correction Officer Tullimero escorted claimant from his cell to his work program and that claimant never returned to his cell on that date (Claim, ¶ 3; Claimant's Supporting Affidavit ¶¶ 5, 8). At 9:45 a.m., an unnamed Correction Officer was making rounds on 28 Company when he observed an icepick type weapon, approximately 5½ inches long with a four-inch black plastic handle, protruding from the bottom of the door frame of claimant's cell (Claim, ¶¶ 3-4; Affidavit ¶ 5). Claimant was then escorted from his work program to SHU (Claim, ¶ 5). 
According to the claim, on October 11, 2023, claimant was issued an Incarcerated Individual Misbehavior Report (misbehavior report) charging him with rules violations for a weapon (113.10), an altered item (113.11), and contraband (113.23) (id. at 5).[FN1]
A Tier III hearing was commenced on October 12, 2023 (id. at 6). Claimant pled not guilty to the charges and moved to dismiss the misbehavior report (id. at 7). The hearing was adjourned to October 25, 2023 (id. at 8). On October 25, 2023, claimant was found not guilty and all the charges were [*2]dismissed (id.). He was released from SHU that same day (id. at 13). Claimant alleges that he was wrongfully and intentionally placed in SHU for 16 days in violation of his due process rights and New York State Department of Corrections and Community Supervision's (DOCCS) own rules and regulations (id. at 11, 12). 
Claimant moves for summary judgment on the issue of liability for his alleged wrongful confinement in SHU from October 10, 2023 until his release on October 25, 2023 and seeks an award of damages in the amount of $100.00 per day for the 16 days of his alleged wrongful confinement in SHU (id. at 3, 5, 9, 12, 13). In support of his motion for summary judgment, claimant submits his own supporting affidavit, a Memorandum of Law and Exhibits A through I, which include a copy of the misbehavior report, the Superintendent Hearing Disposition Rendered, and the SHU Custody Review. Claimant notes that, in addition to his testimony offered at the Tier III hearing along with his plea of not guilty, the Hearing Officer's determination was based upon the testimony of Correction Officer Tullimero, who escorted claimant from his cell to his work assignment at approximately 8:15 a.m., and the testimony of Correction Officer S. Van Norman that at 9:45 a.m., he observed the weapon at the bottom of the door frame of claimant's cell "in plain site [sic]" (Claimant's Exs. E, F; Claimant's Supporting Affidavit, ¶ 8). The Hearing Officer noted that Tullimero testified that he would have "absolutely" noticed the weapon when he "picked up and escorted" claimant to his work program and that claimant's cell had been searched prior to the incident (Claimant's Exs. E, F). The Hearing Officer concluded that, because claimant had never returned to his cell on the date in issue, claimant could not have placed the weapon where it was found and that therefore the weapon was planted in claimant's door frame by someone other than claimant (id.). 
The State cross-moves to dismiss the claim pursuant to CPLR 3211 (a) (7) on the basis that the claim fails to state a cause of action upon which relief may be granted. In that regard, the State argues that claimant's confinement in SHU was privileged because said confinement was not in violation of any of DOCCS's rules or regulations, did not violate claimant's due process rights, and involved discretionary acts of a quasi-judicial nature for which the State is accorded absolute immunity. 
Claimant opposes the State's cross-motion to dismiss the claim arguing that his confinement was wrongful because it was in violation of his due process rights, DOCCS's own rules and regulations, and Corrections Law § 137, referred to as the HALT Act (Humane Alternatives to Long-Term Solitary Confinement Act). Claimant argues that the HALT Act provides that, if an incarcerated individual is in pre-hearing confinement, the disciplinary hearing must be commenced within five days and completed within 15 days of the incarcerated individual's transfer to SHU. Additionally, claimant argues that he never procured or possessed the weapon in issue.
Analysis
Summary judgment is a drastic remedy which should not be granted unless it is made clear by the proponent of the application that there are no genuine issues of material fact (see Andre v Pomeroy, 35 NY2d 361, 364 [1974]). The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law by tendering sufficient evidence to demonstrate the absence of any material issues of fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d [*3]851, 853 [1985]; Zuckerman v City of NewYork, 49 NY2d 557, 562 [1980]). "Failure to make such [a] prima facie showing requires a denial of the motion regardless of the sufficiency of the opposing papers" (Alvarez, 68 NY2d at 324; see Winegrad, 64 NY2d at 853).
In the instant claim, it is undisputed that on October 10, 2023, claimant was placed in SHU and issued a misbehavior report. The Tier III hearing on the misbehavior report was commenced on October 12, 2023. Claimant pled not guilty to the charges and moved to dismiss the misbehavior report. The hearing was then adjourned to October 25, 2023 and, on that date, the charges were dismissed, claimant was found not guilty, and he was released from SHU. 
While the aforenoted facts are undisputed, the critical issue before the Court is whether claimant has met his burden of establishing entitlement to an award of summary judgment in his favor based upon the undisputed facts. Thus, for claimant to be entitled to an award of damages, claimant must first establish a basis for this Court to find that the State is liable as a matter of law. In that regard, for the State to be held liable, claimant must establish that the State either violated DOCCS's rules or regulations or violated claimant's due process rights.
The State maintains that claimant has not established any basis for this Court to find the State liable because there has been no showing by claimant that the State either violated DOCCS's rules or regulations or violated claimant's due process rights. In this vein, the State argues that the filing of the misbehavior report, the determination to confine claimant in SHU pending the Hearing Officer's disposition, and the Hearing Officer's disposition of the charges are discretionary acts of a quasi-judicial nature for which the State is accorded absolute immunity. Thus, the State argues that the Court should grant its cross-motion to dismiss the claim.
It is well established that the State is accorded absolute immunity for the actions of its employees involved in the investigation and prosecution of disciplinary charges brought against incarcerated individuals in a correctional facility and for the actions of the Hearing Officer charged with presiding over and reviewing such matters (see Arteaga v State of New York, 72 NY2d 212 [1988]). This immunity covers discretionary conduct due to its quasi-judicial nature, even if that discretion was erroneously exercised or the findings were subsequently overturned (see id.; Moreland v State of New York, 200 AD3d 1362 [3d Dept 2021]; Loret v State of New York, 106 AD3d 1159 [3d Dept 2013], lv denied 22 NY3d 852 [2013]; Holloway v State of New York, 285 AD2d 765 [3d Dept 2001]; Varela v State of New York, 283 AD2d 841 [3d Dept 2001]).
Absolute immunity may be lost, however, if the State acted in contravention of a governing rule or regulation which caused the incarcerated individual to suffer actual prejudice or a deprivation of due process rights (see Miller v State of New York, 156 AD3d 1067 [3d Dept 2017] [The State retained its immunity and the cause of action for wrongful confinement was dismissed where claimant failed to establish any prejudice resulting from the alleged one-day delay in commencing his disciplinary hearing and the alleged failure to comply with the pertinent regulation, or that, but for the delay, the outcome of his hearing would have been different]).
Correction Law § 137 Program of treatment, control, discipline at correctional facilities (6) provides in pertinent part:
"Except as provided in paragraphs (d) and (e) of this subdivision [which pertains to incarcerated individuals with mental health issues], the superintendent of a correctional facility may keep any incarcerated individual confined in a cell or room, apart from the [*4]accommodations provided for incarcerated individuals who are participating in programs of the facility, for such period as may be necessary for maintenance of order or discipline, but in any such case the following conditions shall be observed:
. . .
(i)(i) No person may be placed in segregated confinement for longer than necessary and no more than fifteen consecutive days . . .
(1) All hearings to determine if a person may be placed in segregated confinement shall occur prior to placement in segregated confinement unless a security supervisor, with written approval of a facility superintendent or designee, reasonably believes the person fits the specified criteria for segregated confinement in subparagraph (ii) of paragraph (k) of this subdivision. If a hearing does not take place prior to placement, it shall occur as soon as reasonably practicable and at most within five days of such placement unless the charged person seeks a postponement of the hearing (Emphasis added)."
The Court finds that claimant's confinement in SHU on October 10, 2023 pursuant to the misbehavior report charging him with violations of facility rules for possession of a weapon, an altered item, and contraband was in accordance with DOCCS's rules and regulations, and was not shown to be in violation of claimant's due process rights (see Correction Law § 137 [6] [l]).[FN2]
In that regard, it is undisputed that Correction Officer Van Norman personally observed the weapon at issue protruding from the bottom of the door frame in claimant's cell prior to filing the misbehavior report. Thus, the Court finds that the misbehavior report was made in accordance with the mandates of 7 NYCRR 251-3.1 (b), which provides in pertinent part that, "[t]he misbehavior report shall be made by the employee who has observed the incident." Additionally, contrary to the arguments advanced by claimant, the Court finds that claimant has not shown that the State violated 7 NYCRR 251-3.1 (c) (4) or 7 NYCRR 254.6 (2) (3)[FN3]
. Thus, the Court finds that claimant's confinement on October 10, 2023 was privileged. Accordingly, claimant is not entitled to any recovery for said confinement (see Arteaga, 72 NY2d; Miller, 156 AD3d). 
Additionally, the Court finds that the hearing was timely commenced on October 12, 2023, within two days of claimant's confinement in SHU, in accordance with DOCCS's rules and [*5]regulations, and was not shown to be in violation of claimant's due process rights (see Correction Law § 137 [6] [l]). Thus, the Court finds that claimant's confinement from October 10, 2023 through October 12, 2023 was privileged and claimant is not entitled to any recovery for said confinement (see Arteaga, 72 NY2d; Miller, 156 AD3d). 
At the hearing held on October 12, 2023, claimant pled not guilty to the charges and moved to dismiss the misbehavior report. The hearing was then adjourned to October 25, 2023 and, on that date, the charges were dismissed, claimant was found not guilty, and he was released from SHU. The Court finds that there are genuine issues of material fact as to whether claimant's confinement in SHU from October 12, 2023 through October 25, 2023 was in violation of DOCCS's rules and regulations or claimant's due process rights (see Correction Law § 137 [6] [i] [i]; 7 NYCRR 251-5.1 [b]). In that regard, the Court notes that the record is devoid of any explanation as to why the hearing was adjourned on October 12, 2023 through October 25, 2023 and whether said adjournment was in compliance with DOCCS's rules and regulations regarding adjournments. Both Correction Law § 137 [6] [i] [i] and 7 NYCRR 251-5.1 (b) allow for an adjournment when the incarcerated person initiates the request for an adjournment. As noted, on the record before the Court, it cannot be determined if claimant, in addition to moving to dismiss the charges, requested an adjournment of the hearing on October 12, 2023. Had the hearing concluded on October 12, 2023, with all the evidence presented including the testimony of Correction Officers Tullimero and Van Norman, claimant would have presumably been released from SHU on that same day.
Accordingly, the Court finds that neither claimant nor the State have met their burden on the issue of the State's liability regarding claimant's confinement from October 12, 2023 through October 25, 2023. 
In sum, contrary to claimant's arguments made in opposition to the State's motion to dismiss, claimant's confinement in SHU from October 10, 2023 through October 12, 2023 did not violate the HALT Act as the hearing was commenced within five days of claimant's confinement in SHU on October 10, 2023 (see Correction Law § 137 (6) (i) (i), [l]). Accordingly, as set forth above, claimant has not met his burden of establishing that the State is liable, as a matter of law, regarding the issuance of claimant's misbehavior report on October 10, 2023 and his confinement in SHU from October 10, 2023 through October 12, 2023.
Accordingly, claimant's motion for summary judgment on the issues of liability and damages is DENIED, in part, as it relates to the issuance of claimant's misbehavior report on October 10, 2023 and his confinement in SHU from October 10, 2023 through October 12, 2023 and the State's cross-motion to dismiss the claim is GRANTED, in part, as it relates to the issuance of claimant's misbehavior report on October 10, 2023 and his confinement in SHU from October 10, 2023 through October 12, 2023.
Claimant's motion for summary judgment on the issues of liability and damages regarding claimant's confinement in SHU from October 12, 2023 through October 25, 2023 and the State's cross-motion to dismiss the claim as it pertains to claimant's confinement in SHU from October 12, 2023 through October 25, 2023 are DENIED, without prejudice to claimant and the State submitting, on or before December 18, 2024, in accordance with the provisions of the Court of Claims Act for service and filing, further papers and exhibits addressing the issue of whether the adjournment of claimant's hearing from October 12, 2023 through October 25, 2023 was in [*6]compliance with DOCCS's rules and regulations regarding adjournments or was in violation of claimant's due process rights.
This constitutes the Interim Decision and Order of this Court.

Footnotes

Footnote 1:The State's cross-motion indicates that claimant was served with the misbehavior report on October 10, 2023 and the misbehavior report dated October 10, 2023 is attached as the State's Ex. C. Additionally, claimant's opposition to the State's cross-motion indicates that claimant was served with the misbehavior report on October 10, 2023 (Claimant's Affirmation in Opposition to the State's Cross-Motion, ¶ 4).

Footnote 2:Additionally, claimant's reliance upon Ponte v Real, (471 US 491[1985]) for the proposition that there was no valid reason for placing claimant in SHU is misplaced. Ponte v Real (471 US) holds that prison officials may be required to explain, in a limited manner, the reason why a witness, who was requested by an incarcerated individual to testify at a disciplinary hearing, was not permitted to testify at the disciplinary hearing. In the case at bar, unlike Ponte v Real, there is no allegation that claimant requested a witness to testify at his disciplinary hearing and that the witness was precluded from testifying at claimant's disciplinary hearing. Indeed, in the case at bar the Hearing Officer's determination that claimant was not guilty was predicated, in part, upon the testimony of Correction Officers Van Norman and Tullimero, who testified at claimant's disciplinary hearing and there is no allegation that claimant made any request for any other witness that was improperly denied by the Hearing Officer (Claimant's Ex. E). 

Footnote 3:The Court notes that claimant cites to 7 NYCRR 251-3.1 (4) (Claimant's Supporting Affidavit, p 10). However, the correct reference to paragraph four is 7 NYCRR 251-3.1 (c) (4).